WESTINGHOUSE ELECTRIC & MFG. CO. v. BROOKLYN RAPID TRANSIT
CO. et al.

(Circuit Court of Appeals, Second Circuit.  July 2, 1919.)

No. 245.

RECEIVERS ⚙⟶128—MORTGAGE NOT SUBJECT TO DISPLACEMENT BY RECEIVERS'
CERTIFICATES.

A mortgage executed to secure bonds of a holding company for stock of
street railroad companies, but which at the time did not own or operate
any lines, *held* not subject to displacement in favor of receiver's certifi-
cates subsequently issued, only a small portion of the proceeds of which
was to be expended on the mortgaged property.

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit in equity by the Westinghouse Electric & Manufacturing Com-
pany against the Brooklyn Rapid Transit Company and others.  From
an order of the District Court authorizing the issuance of receiver's
certificates, the Central Union Trust Company of New York appeals.
Modified.

Larkin & Perry, of New York City (H. V. Poor, John M. Perry, and
C. B. Hughes, all of New York City, of counsel), for appellant.

W. F. Taylor, of New York City, for plaintiff.

I. R. Oeland, of New York City, for defendant.

Carl M. Owen, of New York City (Lindley M. Garrison, Carl M.
Owen, and Harold J. Gallagher, all of New York City, of counsel), for
receiver.

Cravath & Henderson, of New York City, for committee of note
holders.

Rushmore, Bisbee & Stern, of New York City, for committee stock-
holders of Brooklyn Rapid Transit Co.

Scott, Gerard & Bowers, of New York City (Francis M. Scott, of
New York City, of counsel), for Corn Exchange Bank.

William P. Burr, Corp. Counsel, of New York City (Edgar J. Kohler
and Robert L. Stanton, both of New York City, of counsel), for city
of New York.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

PER CURIAM.  This is an appeal from an order of the District
Court authorizing the issue of certificates to an amount not exceeding
$20,000,000 by the receiver of the Brooklyn Rapid Transit Company,
which shall displace, among other liens, that of the Brooklyn Rapid
Transit Company's first refunding gold mortgage, dated July 1, 1902.
Less than $4,000,000 of the proceeds are to be expended upon real es-
tate covered by that mortgage, and $16,000,000 are to be used in the
purchase of the joint and several certificates of the receivers of the
New York Municipal Railway Corporation and New York Consolidated
Railroad Company, the proceeds to be applied to those properties.

Consideration of the whole complicated system and the many details

⚙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

connected with the constituent companies would require a long opinion, not necessary to the parties, who are familiar with every phase of the subject. Therefore we will briefly state the reasons which lead us to conclude that the order should be modified, so as to maintain the lien of this mortgage unimpaired.

At the outset we may say that the issue of receiver's certificates having priority over existing liens as far as possible is unquestionably a necessity, if the Brooklyn Rapid Transit system is to be continued as a going concern. July 1, 1902, the Brooklyn Rapid Transit Company, a corporation organized in 1896 under the Business Corporations Law, executed to the Central Trust Company, as trustee, its first refunding gold mortgage to secure payment of its four per cent. bonds.

At that time the company was purely and simply a financing and holding company, owning practically all the capital stock of the separate surface and elevated railroad corporations which then constituted what is generally known as the Brooklyn Rapid Transit system. This is now a closed mortgage, and bonds of the face value of $27,621,000 are now outstanding as follows:

| | |
|---|---|
| In the Brooklyn Rapid Transit treasury | $5,092,000 |
| Pledged to secure bank loans | 7,079,000 |
| Pledged to secure Brooklyn Rapid Transit five per cent. secured gold notes | 10,000,000 |
| Pledged in the Brooklyn City Railroad Company guaranty fund | 250,000 |
| Owned by the Nassau Electric Railroad Company, one of the subsidiaries of the Brooklyn Rapid Transit Company | 1,761,000 |
| Outstanding in the hands of the public | 3,449,000 |

The Central Union Trust Company, successor of the Central Trust Company, trustee, on behalf of bonds outstanding in the hands of the public and banks holding bonds as collateral security for loans, appeals from the order.

The after-acquired property clause of the mortgage is, "All and singular the property and franchises of the said Transit Company, whether now owned by the Transit Company or hereafter acquired by the Transit Company with the proceeds of said bonds, including particularly the property hereinafter described," but no real estate is described. Down to August 1, 1918, the Transit Development Company, also organized under the Business Corporations Law in 1902, supplied the greater part of the electric power for the whole system.

March 29, 1907, the Brooklyn Rapid Transit Company and the Transit Development Company and the Central Trust Company, as trustee, entered into and executed an agreement, which is to be treated as a mortgage of all the property of the Development Company to the trustee, with the exception of certain real estate described by metes and bounds, to secure the payment of certificates of indebtedness of the Development Company amounting to $20,000,000 issued or to be issued to the Brooklyn Rapid Transit Company and by it deposited or to be deposited with the Central Trust Company, as trustee under the first refunding gold mortgage.

July 24, 1918, the Development Company executed a mortgage to the Central Union Trust Company, trustee, including certain real estate described by metes and bounds which had been purchased by moneys

paid by the Brooklyn Rapid Transit Company for certificates of indebtedness of the Development Company exceeding in amount $11,-000,000, to secure bonds issued under the first refunding gold mortgage. August 1, 1918, the Transit Development Company merged into the Brooklyn Rapid Transit Company, from which date the latter began for the first time and has since continued to supply electrical power to the various railroad corporations constituting the system.

The mortgage must as matter of law give the same protection to all the bonds issued under it, irrespective of the date of issuance. Purchasers of those bonds have a right to rely upon the fact that when the mortgage was executed the Brooklyn Rapid Transit Company was a mere holding company, neither operating the roads which constituted the system nor supplying them with power. In our opinion the business of the Brooklyn Rapid Transit Company was a private one from 1902 to 1918, not affected with a public interest, and there is nothing to justify displacing the lien of such a mortgage in favor of persons who advance money, most of which is to be applied to the benefit of other parts of the system.

It has been suggested by the corporation counsel as amicus curiæ that the Brooklyn Rapid Transit Company has by virtue of section 5, subd. 4, art. 1, of the Public Service Commissions Law (Consol. Laws, c. 48), because of its stock control of the constituent companies, become a common carrier, and that it has become a street railroad corporation within the purview of section 2, subd. 7, art. 1, of the same law. The first section was added in 1910, and the second section under an act becoming a law June 6, 1907, and taking effect July 1, 1907; so that we do not think the bondholders, with rights accruing under mortgages dated July 1, 1902, and March 29, 1907, are affected by either amendment of the law, whatever may be the character of the corporation in its relations to the city. It may be that by virtue of these statutory provisions the Brooklyn Rapid Transit Company after July 1, 1907, became subject to the supervision of the Public Service Commission, and it may also be that at least from August 1, 1918, because of the character of its business, it has been so affected with a public interest as to become a public utility corporation; but these questions are not before us.

It is sought, however, to justify the order on the ground that the advances are really intended to preserve the property, and therefore may be given priority on this account, even if the business of the Brooklyn Rapid Transit Company, as conducted at the date of receivership, is not to be treated as affected with a public interest. The proofs do not sustain this contention. The moneys are not to be used to prevent waste or destruction, or to continue the system as a going concern, until it can be sold out and its assets divided among its creditors. No foreclosure proceeding has been instituted, except of the "consolidated" mortgage of June 1, 1918, and the plain purpose of the creditors' bill and of the original order appointing the receivers, and of the order appealed from, is to enable the system to continue permanently, after being completed out of the proceeds of these certificates.

Coming, now, to the joint and several certificates in the sum of

$16,000,000 to be issued by the receivers of the New York Municipal Railway Corporation and the New York Consolidated Railroad Company, and sold to the receiver of the Brooklyn Rapid Transit Company, we note that the two former companies are public utility corporations incorporated under chapter 4 of the Laws of 1891 and its amendments, known as the Rapid Transit Act, and that the Consolidated Company owns the whole capital stock of the Municipal Company, and has guaranteed payment of its bonds, principal and interest, by indorsement thereon.

January 31, 1913, an agreement was entered into between the Municipal Railway Corporation and the New York Consolidated Railroad Company whereby the former undertook to operate the latter's railroads and the latter agreed to acquire the entire capital stock of the former as issued from time to time. This arrangement was made in view of the contemplated contract between the Municipal Company and the city of New York known as "contract No. 4," which was executed March 9, 1913. Under this contract the Municipal Company agreed to contribute $13,500,000 toward the cost of construction by the city of a rapid transit railroad connecting the existing elevated railroads of Brooklyn and New York and also to reconstruct the New York Consolidated Railroad Company's roads, so as to adapt them for operation in connection with the city's rapid transit road and to equip and operate the latter, when constructed, as lessee of the city. March 25, 1913, the Municipal Company assigned its right of operation under contract No. 4 with the city to the Consolidated Company, which assumed its duty thereunder.

It is contemplated to apply under the order appealed from about $8,500,000 of the proceeds of these joint and several certificates to the necessities of the Municipal Railway Corporation, and they are given priority over about $14,000,000 of certificates of indebtedness of the New York Consolidated Railroad Company and a large amount of its common and preferred stock, as well as the entire capital stock of the Municipal Corporation, all of which are pledged to the Central Union Trust Company, as trustee, as collateral for payment of obligations of the Brooklyn Rapid Transit Company. This collateral, however, was that of public utility corporations, and we think that, in view of the inseparable connection between the Municipal Corporation and Consolidated Company, though separate entities, and of the absolute necessity of maintaining, if possible, the transportation system of which they are a part, the trustee pledgee cannot complain, either of the priority given the receiver's certificates or of the application of their proceeds, subject hereafter to adjustment between the companies as directed by the order.

Accordingly, the order, modified in accordance with this opinion in respect to the lien of the first refunding gold mortgage of the Brooklyn Rapid Transit Company, is affirmed.